## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DR. ZORYLEEN LLANOS FERRER,** <br> *Plaintiff,* <br> v. <br> **FRANCISCO QUIÑONES RIVERA, SECRETARY OF THE DEPARTMENT OF CORRECTION AND REHABILITATION,** <br> *in his official capacity;* <br> **DEPARTMENT OF CORRECTION AND REHABILITATION OF PUERTO RICO; COMMONWEALTH OF PUERTO RICO; ANA I. ESCOBAR PABÓN,** <br> *in her personal capacity;* <br> **FRANCISCO MÉNDEZ RIVERA, ESQ.,** <br> *in his personal capacity;* <br> **MARÍA ORTIZ DÍAZ,** *in her personal capacity;* <br> **SINAIRA CAMACHO HEREDIA,** <br> *in her personal capacity;* <br> **MARÍA YOLANDA ORTIZ DÍAZ,** <br> *in her personal capacity;* <br> **MODESTO SÁNCHEZ DE LEÓN,** <br> *in his personal capacity;* <br> **ALEXIS RODRÍGUEZ RIVERA,** <br> *in his personal capacity;* <br> **HARRY JIMÉNEZ,** *in his personal capacity;* <br> **PHYSICIAN CORRECTIONAL SERVICES HMO; ORLANDO QUIÑONES,** <br> *in his personal capacity;* <br> **JOHN AND JANE DOES 1-10; INSURANCE COMPANIES 1-10,** <br> *Defendants.* | **CIVIL NO. 26-cv-1260** <br><br> **RE:** Employment Discrimination; Disability Discrimination; Failure to Accommodate; Retaliation; Hostile Work Environment; Equal Pay; First Amendment; Procedural and Substantive Due Process; Equal Protection; Conspiracy to Violate Civil Rights; Violations of ADA, Rehabilitation Act, Title VII, Equal Pay Act, 42 U.S.C. §§ 1981, 1983, 1985 & 1986; Section 1981 Race Discrimination; FMLA Interference and Retaliation; FLSA; Supplemental State Law Claims <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, ***Dr. Zoryleen Llanos Ferrer***, through the undersigned attorneys, and respectfully states, alleges, and prays:

This case is about a Black, disabled woman in public service, who exercised her rights—only to becomes the subject of a coordinated, multi-year campaign of demotion, fabricated discipline, financial strangulation, and institutional persecution, only designed to silence her.

1

## I. PRELIMINARY STATEMENT

1. This is a civil action brought to remedy a sustained, coordinated, and continuing pattern of disability discrimination, sex- and race-based discrimination, retaliation, hostile work environment, denial of reasonable accommodations, deprivation of constitutional rights, conspiracy, and abuse of administrative and ethics processes directed against Plaintiff Dr. Zoryleen Llanos Ferrer—a licensed clinical psychologist and Afro-descendant woman with multiple recognized disabilities—by her employer, the Puerto Rico Department of Correction and Rehabilitation ("DCR"), its current and former senior officials, and a private contractor acting in concert with state actors.

2. Plaintiff brings claims under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; and supplemental claims under the laws and Constitution of the Commonwealth of Puerto Rico, including without limitation Law No. 44 of July 2, 1985 (disability), Law No. 100 of June 30, 1959 (employment discrimination), Law No. 69 of July 6, 1985 (sex), Law No. 17 of April 22, 1988 (sexual harassment), Law No. 115 of December 20, 1991 (anti-retaliation), Law No. 8 of February 4, 2017 (public service human resources administration), Law No. 17 of April 17, 1931 (wage payment), Articles 1536–1537 of the Puerto Rico Civil Code of 2020 (general tort liability), and the Puerto Rico Constitution.

3. Beginning no later than 2022 and intensifying after Plaintiff filed EEOC Charge No. 515-2024-00536, Defendants engaged in a campaign of progressive demotion, professional

2

isolation, salary suppression, fabricated discipline, weaponization of internal investigations, and coordinated use of the Puerto Rico Office of Government Ethics ("OEG") as a retaliatory forum to punish Plaintiff for exercising rights protected under federal and state law and for opposing unlawful conduct in the public service.

4. Plaintiff seeks declaratory and injunctive relief, reinstatement to her supervisory position, back pay and front pay, restoration of compensation differentials and benefits, compensatory damages for emotional, reputational, family, financial and physical harm, punitive damages against the individual defendants, an order directing the preservation of evidence and adverse inferences for spoliation, attorneys' fees, costs, and any other relief the Court deems just and proper.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action arises under the Constitution and laws of the United States, including the ADA, the Rehabilitation Act, Title VII, the Equal Pay Act, 42 U.S.C. §§ 1981, 1983, 1985 and 1986, the FMLA, and the FLSA.

6. This Court has supplemental jurisdiction over Plaintiff's Puerto Rico statutory and common-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because all Defendants reside, are organized, or maintain offices in the District of Puerto Rico, and because a substantial part of the acts and omissions giving rise to these claims occurred in the District of Puerto Rico, where Plaintiff resides and is employed by DCR.

8. Plaintiff has exhausted administrative remedies. Plaintiff filed EEOC Charge No. 515-2024-00536 on or about September 13–16, 2024, alleging discrimination on the basis of

3

disability, sex, race, and color, and retaliation. The U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue on February 3, 2026, and this action is timely filed within ninety (90) days of receipt of that notice. The acts complained of include continuing violations and discrete acts that have continued to occur from the EEOC charge date through the filing of this Complaint. No exhaustion of administrative remedies is required for Plaintiff's claims under 42 U.S.C. § 1981 (pursued via § 1983), the FMLA, or the FLSA.

### III. THE PARTIES

9. Plaintiff *Dr. Zoryleen Llanos-Ferrer* is a resident of Puerto Rico and a Black/Afro-descendant woman. She is a Puerto Rico-licensed clinical psychologist employed as a career civil servant by the Department of Correction and Rehabilitation of Puerto Rico, where she has functioned as Supervisor of the Metropolitan Evaluation and Counseling Program (Sección de Programas de Evaluación y Asesoramiento Metropolitano, "SPEA") Carolina–San Juan, formerly the Negociado de Rehabilitación Metropolitano ("NRT"). At all times relevant, Plaintiff is and was a "qualified individual with a disability" within the meaning of the ADA and the Rehabilitation Act, and an "eligible employee" within the meaning of the FMLA.

10. Defendant Department of Correction and Rehabilitation of Puerto Rico ("DCR") is an agency of the Commonwealth of Puerto Rico and Plaintiff's employer within the meaning of the ADA, Title VII, the Equal Pay Act, the FMLA, and the FLSA. DCR receives federal financial assistance and is a covered entity under Section 504 of the Rehabilitation Act. DCR employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks and is therefore a covered employer under the FMLA.

4

11. Defendant Commonwealth of Puerto Rico is the legal sovereign responsible for DCR and is a proper defendant for purposes of Title VII, the ADA, and Section 504 of the Rehabilitation Act.

12. Defendant Francisco Quiñones-Rivera is the current Secretary of DCR and is sued in his official capacity for prospective declaratory and injunctive relief, including reinstatement, restoration of compensation, and modification of policies and practices that continue to discriminate and retaliate against Plaintiff.

13. Defendant Ana I. Escobar-Pabón is the former Secretary of DCR. She is sued in her personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3) for actions she took, ordered, ratified, and continues to influence under color of state law in violation of Plaintiff's constitutional and statutory rights.

14. Defendant Francisco Méndez-Rivera, Esq. is and at relevant times was DCR's principal attorney and head (in propriety or as acting head) of DCR's Legal Division. He is sued in his personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3) for retaliatory conduct undertaken under color of state law, including conduct undertaken outside any legitimate legal-advisory function and motivated by, among other things, animus arising from a prior intimate relationship with Plaintiff that Plaintiff terminated.

15. Defendant María Ortiz Díaz is a non-psychologist DCR employee who has held herself out and acted as Plaintiff's supervisor without lawful designation. She is sued in her personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3).

16. Defendant Sinaira Camacho-Heredia is held out by DCR as "Directora PEA Nivel Central"—a position that, on information and belief, does not exist within the applicable classification plan. She is sued in her personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3).

17. Defendant María Yolanda Ortiz-Díaz is a DCR supervisor of an unrelated office who, on instructions from Defendants Escobar and María Ortiz-Díaz, has retained custody of clinical records belonging to Plaintiff's patients, obstructing Plaintiff's ability to perform her duties. She is sued in her personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3).

18. Defendant Modesto Sánchez-de León is a DCR employee who, on information and belief, was irregularly designated to a supervisory role over Plaintiff in or around September 2023, was paid more than Plaintiff for substantially equal work, and was permitted telework while Plaintiff was denied telework as a reasonable accommodation. He is sued in his personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3).

19. Defendant Alexis Rodríguez-Rivera is the Manager of the Office of Investigations of the Correctional System (Oficina de Investigaciones del Sistema Correccional, "OISC"). He is sued in his personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3) for orchestrating, conducting, or facilitating retaliatory administrative investigations targeting Plaintiff.

20. Defendant Harry Jiménez is a DCR official with responsibilities in occupational health and reasonable-accommodation processing. He is sued in his personal capacity under 42 U.S.C. §§ 1981 (via § 1983), 1983 and 1985(3).

21. Defendant Physician Correctional Services HMO ("Physician Correctional") is, on information and belief, a private corporation that contracts with DCR to provide behavioral and clinical services within DCR facilities. At all relevant times, Physician Correctional acted under color of state law as a willful participant in joint action with state officials, was performing functions traditionally and exclusively reserved to the state and acted in concert with the individual state Defendants to retaliate against and isolate Plaintiff.

22. Defendant Orlando Quiñones is, on information and belief, an officer or principal of Physician Correctional. He is sued in his personal capacity for conduct undertaken in concert with state actors and under color of state law.

23. Defendants John and Jane Does 1-10 are persons whose true identities are presently unknown to Plaintiff, including, without limitation, additional DCR officials, supervisors, investigators, OEG officials (such as the officials currently identified by Plaintiff as Lumarie Rivas-Torres and Nimia Salabarría-Belardo, whose addition as defendants is reserved), human-resources personnel, and contractor personnel whose acts or omissions contributed to the violations alleged. Plaintiff will seek leave to amend to identify and substitute these persons upon discovery.

24. Defendants Insurance Companies 1-10 are insurance companies whose identities are currently unknown that issued insurance policies in favor of any of the foregoing Defendants and/or in favor of any known or unknown co-defendants and/or third parties, which cover events and damages such as those suffered by Plaintiff.

## IV. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### A. Plaintiff's Disabilities and Continuous Treatment

25. Plaintiff is a qualified individual with disabilities. She is diagnosed with epilepsy and recurrent seizures, encephalomalacia, chronic sleep disorders, recurrent migraines, a documented history of traumatic brain injury with episodes of loss of consciousness, major depressive disorder (single episode, 2019–present), and generalized anxiety disorder. Since 2024 she has also had a fractured ankle surgically repaired with screws and metal plates that materially limits walking, standing, and driving.

26. Plaintiff has remained under continuous psychiatric, neurological, cardiologic, orthopedic, and primary-care treatment since 2019. With or without reasonable accommodations,

Plaintiff is qualified to perform, and has performed, the essential functions of her position as Supervisor of SPEA Carolina–San Juan and of her clinical psychologist position.

27. Plaintiff has presented Defendants with more than one hundred (100) medical documents and accommodation requests authored by neurologists, a cardiologist, a psychiatrist, primary-care physicians, two physiatrists, and an orthopedic specialist. Plaintiff originally submitted, in 2022, more than thirty-five (35) pages of medical records in support of her formal accommodation request, which DCR denied in writing. The same medical conditions that qualify Plaintiff as disabled also constitute "serious health conditions" under the FMLA, triggering DCR's duty to provide FMLA leave and rights.

**B. Pre-EEOC Pattern: Reclassification, Demotion, and Designation of Modesto Sánchez**

28. In or around February 2023, DCR purported to implement a new classification plan. Plaintiff was, at the time, the most academically qualified supervisor in her group and the only Puerto Rico-licensed psychologist among the five SPEA supervisors. She is also the only Black/Afro-descendant person and the only person with a known disability in that group.

29. On May 22–25, 2023—shortly after Plaintiff amended a state-court complaint against DCR, the Commonwealth, Escobar, and Camacho (CA2023CV02351)—Defendant Escobar, through DCR, purported to terminate a supervisor designation Plaintiff contends she never validly held in temporary form, depriving her of supervisory functions and the corresponding differential without notice, hearing, or opportunity to be heard, in violation of Plaintiff's vested property interest in her career classification under *Carta Normativa* 1-2023 of OATRH, Law No. 8-2017, and applicable regulations.

30. Of the five SPEA supervisors, Plaintiff was the only one demoted under the Escobar administration, despite being the most credentialed candidate. The demotion has continued

8

through the present. On information and belief, the demotion was motivated by Plaintiff's race, sex, disability, public denunciations of agency corruption, and prior protected complaints. The selection of Plaintiff—the only Black/Afro-descendant supervisor—for demotion while retaining all non-Black supervisors constitutes direct evidence of race discrimination actionable under 42 U.S.C. § 1981 (via § 1983) and Title VII.

31. On or about September 20, 2023, Defendant Escobar designated Defendant Modesto Sánchez-de León—a non-disabled, non-Black male whose qualifications were materially inferior to Plaintiff's—as supervisor over Plaintiff's functions. Sánchez was paid more than Plaintiff for the same or substantially equal work, was permitted telework, and was treated more favorably than Plaintiff in every material term and condition of employment.

32. Plaintiff and her then-counsel, Lcda. Elaine Guzmán, formally challenged Sánchez's designation, including by a cease-and-desist letter dated April 4, 2024, on the grounds that the designation violated Law No. 8-2017, the applicable collective bargaining agreement, OATRH normative letters, the Government Ethics Act, and the merit principle, and that the designation formed part of a pattern of harassment, intimidation, exclusion, and retaliation against Plaintiff. In response, Plaintiff received warnings to desist from her opposition, was excluded from operational decisions, and saw her functions further stripped.

## C. Reasonable-Accommodation Requests Ignored, Fragmented, or Denied

33. Beginning no later than 2021, Plaintiff submitted multiple reasonable-accommodation requests addressing, among other things, a medical inability to drive long distances, the need for telework, lighting modifications, and ergonomic equipment. The requests were ignored, improperly fragmented, processed by persons without authority, or denied. The

Secretary has never issued the formal written notice required by law, nor has DCR conducted a good-faith interactive process.

34. Despite presenting medical documentation, Plaintiff was denied a recommended schedule of three (3) days in person and two (2) days remote. Defendant Sánchez—without any disability—was permitted two (2) in-person and three (3) remote days. Other comparators without disabilities, including Sánchez, were permitted full or partial telework while Plaintiff was not.

35. Defendant Méndez-Rivera improperly intervened in a reasonable-accommodation request that Plaintiff submitted to Human Resources, communicated in writing that the accommodation "did not lie," and thereafter threatened and intimidated Plaintiff in writing, including by stating he would refer her for discipline because she had asserted her rights as a person with a disability.

36. DCR's Occupational Health and Safety division took approximately one (1) year to provide ergonomic equipment recommended by two physiatrists and an orthopedic specialist.

37. Plaintiff remained registered in DCR's system as posted to Bayamón despite working at Carolina. The continued misregistration imposes commute burdens that aggravate her disabilities, exacerbates anxiety symptoms, and distances her from her treating physicians.

38. Plaintiff's disabilities, including epilepsy, traumatic brain injury sequelae, major depressive disorder, and the post-surgical ankle condition, constitute "serious health conditions" under the FMLA, 29 U.S.C. § 2611(11). DCR failed to: (a) designate as FMLA leave the absences attributable to these conditions; (b) provide Plaintiff with the required FMLA notices; (c) engage in a good-faith process to determine FMLA eligibility; and (d) restore Plaintiff to her position or an equivalent position following FMLA-protected leave. Instead, DCR counted FMLA-protected absences against Plaintiff in disciplinary

10

proceedings and used such absences as a pretext for adverse actions, including admonitions citing absenteeism.

**D. June 2024 Punitive Transfer and Aftermath**

39. On June 27, 2024—shortly after Plaintiff renewed her accommodation requests and engaged in protected opposition—Plaintiff was served with a notice transferring her from PEA Carolina–San Juan to Bayamón under the pretext of a "precautionary" measure based on a harassment complaint Defendant María Ortiz-Díaz filed against Plaintiff. Plaintiff had previously filed her own harassment complaint against María Ortiz-Díaz, which DCR did not address.

40. The transfer violated Plaintiff's collective bargaining agreement, was implemented without notifying her union (UGT), denied a far less burdensome accommodation that had been requested, and materially aggravated her medical conditions. The transfer was a retaliatory adverse action in violation of the ADA, the Rehabilitation Act, Title VII, 42 U.S.C. §§ 1981 and 1983, and the FMLA.

41. In January 2025, HR Officer Ivette Rivera-Zayas authorized Plaintiff to resume work at the Carolina institution. Despite that authorization, Plaintiff has been kept in professional isolation: she is not assigned cases, files, or inmate evaluations, and contract workers (Physician Correctional psychologists) have been assigned her former responsibilities. Since the reassignment, Plaintiff has been given a single psychological evaluation.

**E. Theft and Retention of Confidential Records**

42. On April 26, 2024, Defendant María Ortiz-Díaz, acting under orders from Defendant Escobar, entered Plaintiff's office and removed confidential medical and psychological files pertaining to Plaintiff and to third-party inmates, without authorization or prior notice

11

and in violation of statutory and agency confidentiality protocols. Plaintiff thereafter filed a complaint with the U.S. Department of Health and Human Services.

43. On April 4, 2024, Defendant María Yolanda Ortiz-Díaz entered Plaintiff's SPEA Carolina office banging her fists, screaming, and forcing the door, in the presence of witnesses, after Plaintiff sent an email regarding María Yolanda's unlawful retention of clinical records. Plaintiff filed a police report; the Police concluded that DCR had a duty to intervene institutionally and that, if the conduct persisted, it could support a stalking order. Plaintiff requested cautionary measures and protection from DCR; her request was ignored, and her workplace harassment complaint was denied.

44. María Yolanda Ortiz-Díaz continues to retain a portion of Plaintiff's patients' clinical records under lock and key on instructions from Escobar and María Ortiz-Díaz, obstructing Plaintiff's ability to perform her duties, violating clinical confidentiality and applicable HIPAA-related protections, and exposing Plaintiff to professional and licensure risk.

**F. Retaliation After EEOC Filing**

45. On September 16, 2024, Plaintiff filed EEOC Charge No. 515-2024-00536 alleging discrimination based on sex, race, color, disability, and retaliation. The filing of that charge constitutes protected activity under the ADA, the Rehabilitation Act, and Title VII.

46. Beginning immediately after the EEOC charge and continuing through the present, Defendants escalated and continued a pattern of harassment and institutional retaliation, including, without limitation: (a) successive administrative investigations; (b) a coordinated block of four (4) disciplinary recommendations against Plaintiff in less than six (6) months, based on stale, false, or fabricated allegations; (c) the construction of an artificial disciplinary record; (d) professional isolation and removal of substantive functions; (e) refusal and delay of reasonable accommodations; (f) the activation,

12

prosecution, and continuation of an unfounded ethics complaint before the OEG; (g) selective surveillance; and (h) ethical conflicts arising from Defendant Méndez-Rivera's direct intervention against Plaintiff.

47. Defendants have used events from 2021, 2022, and 2023 to formulate or sustain disciplinary measures imposed after the EEOC charge, in violation of DCR's own progressive-discipline regulations and principles of timely notice and reasonable promptness. The use of stale and reglementary improper conduct as the basis for post-charge discipline is additional evidence of pretext and selective persecution.

48. On December 2, 2024—approximately three (3) months after the EEOC filing—DCR issued an intent to suspend Plaintiff, despite her never having been disciplined before. On August 15, 2025, under the current Secretary, that intent was converted into a formal admonition based on alleged failure to deliver statistics for the 2021–2022 period—statistics that, on information and belief, corresponded to office-systems-auxiliary functions rather than to Plaintiff's position.

49. On June 27, 2025, after Plaintiff's counsel Ms Elaine Guzmán Esq. sent a formal cease-and-desist demanding that DCR halt the retaliation, Defendants responded not by stopping but by issuing additional admonitions related to absenteeism and alleged harassment—evidence of causal connection and institutional tolerance.

50. Plaintiff received successive admonitions dated September 15, 2025 (received September 22, 2025), October 7, 2025 (received October 15, 2025), and December 4, 2025 (received January 14, 2026), based on alleged workplace harassment of María Ortiz-Díaz, insubordination, improper conduct, absenteeism, and irregular intervention with invoices. The proximity of each admonition to Plaintiff's protected activity, the recycling of identical or overlapping facts across multiple admonitions, the use of inconsistent witness

statements, and the imposition of discipline for absences caused by documented disability all reflect a pattern of retaliatory pretext.

51. The admonitions and disciplinary processes have been consolidated before the *Comisión Apelativa del Servicio Público* ("CASP") in cases including AQ-25-000728, AQ-25-000837, AQ-25-000841, and AQ-26-0033DC, with hearings set for May 27, 2026, and September 2026. Plaintiff incorporates the pendency and substance of those administrative challenges as further evidence of the retaliatory pattern.

**G. Use of the Office of Government Ethics as a Retaliatory Forum**

52. In or about July 2024, Defendant Méndez-Rivera, under the Escobar administration, prepared and signed a referral to the OEG against Plaintiff, attaching DCR documents and instructing OEG personnel to act on "alleged violations of the Government Ethics Act," centered on Plaintiff's alleged "usurpation" of the supervisor title (functions Plaintiff lawfully exercised) and on her signature on certain invoices in January 2024 connected to a Physician Correctional sub-contractor. That referral is subject of OEG Complaint 26-01.

53. On July 17, 2025, the OEG filed Complaint 26-01 against Plaintiff for allegedly "obstinately exercising functions"—functions whose validity and scope are simultaneously sub judice before CASP. DCR has separately disciplined Plaintiff for the very same facts, generating duplicative punishment, forum-shopping, and the use of parallel forums to multiply sanctions for one factual controversy. The OEG seeks fines exceeding $20,000.

54. On information and belief, OEG continued to coordinate with DCR and Méndez-Rivera throughout 2024–2026 to sustain or justify the ethics complaint, while declining to act on equivalent allegations Plaintiff has made against comparators—including allegations of unlawful practice of psychology and irregular appointments concerning María Ortiz-Díaz, Modesto Sánchez-de León, and Sinaira Camacho-Heredia. OEG's selective enforcement

14

supports inferences of unequal treatment, deviation of power, and use of the ethics forum as an instrument of retaliation.

55. On November 3, 2025, Plaintiff filed a constitutional challenge in the Court of First Instance, San Juan, captioned SJ2025CV10005, challenging OEG's authority and procedures as applied. Despite that challenge and a pending motion to dismiss, OEG continued the administrative process, denied dismissal, and ordered Plaintiff to answer within twenty (20) days, refusing to await CASP's adjudication.

## H. Defamation by Defendant Escobar

56. Defendant Escobar made false public statements to media outlets accusing Plaintiff of absenteeism and dereliction of duty. Escobar publicly suggested that Plaintiff's clinical files had been transferred because Plaintiff was not working her cases, when in fact the same officials and agents named here removed those files to prevent Plaintiff from working them. Escobar also publicly disclosed and mischaracterized confidential information about Plaintiff. The defamatory statements were made with knowledge of falsity or with reckless disregard for the truth and have damaged Plaintiff's professional reputation and caused severe emotional distress.

## I. Equal Pay, Salary Suppression, and Wage Manipulation

57. From 2023 through the present, Plaintiff has received less compensation than male and/or non-Black/non-Afro-descendant comparators performing the same, fewer, or substantially equal work in jobs requiring equal skill, effort, and responsibility under similar working conditions—including, without limitation, Defendant Modesto Sánchez-de León.

58. In February 2024, DCR revoked Plaintiff's supervisory differential while continuing to assign her supervisory duties. The revocation followed a prior reinstatement of the same

differential based on earlier institutional recognition that its removal was unlawful. The differential has not been restored.

59. Plaintiff's remote work performed during the COVID-19 pandemic in 2020 was never properly credited or paid; instead, that time was charged against her sick and vacation balances. Since approximately 2023, DCR has imposed deductions of approximately $400 per month, generating a claimed debt of more than $16,000, and has refused to correct KRONOS records of attendance, leave, and time worked—while making analogous corrections for similarly situated employees. Defendants Sinaira Camacho-Heredia and María Ortiz-Díaz promoted these deductions with actual knowledge that Plaintiff had performed the underlying remote work.

60. From 2022 through 2025, DCR repeatedly paid Plaintiff irregularly or not at all and continued to pay her by paper check requiring travel to San Juan—despite Plaintiff's express disability-related request for direct deposit—in violation of Law No. 17 of April 17, 1931. The Payroll Division made unlawful deductions and erroneous salary calculations; the Licensing Division refused to authorize pay for weekend days worked on detail. From 2022, 2023, and 2024, Plaintiff's health insurance was suspended or inactivated multiple times in retaliation for her protected activity, depriving her of access to treatment.

61. Defendants' failure to pay Plaintiff all wages earned, including the supervisory differential, compensation for remote work during the pandemic, and pay for weekend work, and their imposition of unlawful deductions totaling over $16,000, constitute violations of the FLSA, 29 U.S.C. §§ 206–207, and the Equal Pay Act, 29 U.S.C. § 206(d), in addition to applicable Puerto Rico wage statutes.

62. As a direct and foreseeable consequence of the foregoing, Plaintiff and her household experienced severe financial deprivation, including approximately one (1) year without electric service (requiring purchase of generator fuel) and approximately a year and a half without water service between 2024 and 2025, damage to her credit, inability to pay for medications and medical care, and severe emotional and family harm—including harm to her bedridden father and her children.

**J. Contractor Interference: Physician Correctional and Orlando Quiñones**

63. After Plaintiff publicly and internally denounced what she believed to be unlawful practices by Physician Correctional and its collaboration with DCR, Defendants Physician Correctional and Orlando Quiñones, in concert with Defendants Escobar, Méndez-Rivera, María Ortiz-Díaz, and Sinaira Camacho-Heredia, recommended and pressed for disciplinary measures against Plaintiff—a career employee over whom they had no regular disciplinary authority—based on false and unsubstantiated information.

64. DCR's own admonition letter reflects that, on a phone call with Physician Correctional's corporate counsel and Orlando Quiñones, DCR received the false and unfounded information that it then used to initiate a baseless disciplinary process against Plaintiff and to refer her to the OEG.

65. Physician Correctional psychologists were instructed not to follow Plaintiff's referrals or clinical directives. Patients evaluated by Plaintiff and assigned to contractor groups were rejected on direct instructions from Sinaira Camacho-Heredia, María Ortiz-Díaz, Orlando Quiñones, and Physician Correctional counsel, who ordered that no cases originating from Plaintiff be accepted. One contractor psychologist confirmed in writing that he had been instructed not to accept cases that did not come from María Ortiz-Díaz. Meetings to that effect were held in government facilities.

66. In August 2025, Physician Correctional and Orlando Quiñones, joined by Camacho-Heredia and Méndez-Rivera, intimidated psychologists and threatened to close the office to deter support for Plaintiff. After PEA psychologists nonetheless issued a letter of support denouncing irregularities, a scheduled meeting with them was cancelled.

## K. First Amendment Activity, Witness Retaliation, and Union Bypass

67. Plaintiff has spoken publicly to the press as a citizen on matters of significant public concern—including alleged corruption, misuse of public resources, irregular appointments, denial of disability accommodations, and contractor misconduct affecting incarcerated patients—going beyond her official duties. Defendants retaliated against her for those public statements.

68. Plaintiff is a unionized employee and a member of the UGT. The union was not notified of her transfer, of the disciplinary investigations, or of the unauthorized access to protected records, in violation of Plaintiff's collective-bargaining rights.

69. Witnesses who supported Plaintiff or recognized her rights have themselves been retaliated against. HR Director Ivette Rivera Zayas initially recognized and restored Plaintiff's supervisory differential, after which Defendant Escobar ordered it revoked, and Rivera Zayas was thereafter investigated and pursued for having acted lawfully. Other witnesses—including PEA Carolina contractor psychologists, Irene Montes-Montes, María Bonilla, and Grisell Ortiz-Castro—have been intimidated, disciplined, delayed in salary, or otherwise pressured for refusing to participate in conduct against Plaintiff.

## L. Spoliation: Defendants' Failure to Preserve Evidence After Legal Hold

70. Beginning June/July 2025, Plaintiff's federal counsel issued multiple legal-hold notices to DCR, Méndez-Rivera, the current Secretary, OEG, Human Resources (Ivette Rivera-Zayas), and others, requiring the immediate preservation of files, emails, metadata, audit

logs, access audits, evaluation instruments, communications, time sheets, and other materials related to the controversy.

71. On July 2, 2025, counsel sent a follow-up legal hold to the Director of DCR's Legal Division specifically warning that there was reason to believe that documents and records had been transferred, removed, concealed, altered, or possibly destroyed, including metadata and identifying dates.

72. Defendants disregarded those notices, never provided written confirmation of compliance, and—on information and belief—continued to alter, contaminate, move, or fail to preserve evidence subject to the holds. The duty to preserve was triggered no later than the dates of the legal-hold notices, and litigation was clearly foreseeable. Plaintiff seeks adverse inferences and other appropriate remedies for spoliation.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

*(Disability Discrimination, Failure to Accommodate, and Retaliation under Title I of the ADA, 42 U.S.C. §§ 12112, 12203 — Against DCR and the Commonwealth)*

73. Plaintiff incorporates by reference all preceding paragraphs.

74. Plaintiff is a qualified individual with a disability under the ADA. Defendants knew of Plaintiff's disabilities, failed to engage in a good-faith interactive process, and failed to provide reasonable accommodations including telework, schedule modification, ergonomic equipment, modified driving requirements, and direct deposit.

75. Defendants subjected Plaintiff to adverse employment actions—including denial of accommodations, removal of the supervisory differential, demotion, professional isolation, the punitive transfer to Bayamón, fabricated discipline, and salary deductions—because of

her disability and because she requested accommodations and engaged in protected activity, in violation of 42 U.S.C. §§ 12112 and 12203.

76. These actions were intentional, willful, and undertaken with reckless indifference to Plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION
*(Disability Discrimination, Failure to Accommodate, and Retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 — Against DCR and the Commonwealth)*

77. Plaintiff incorporates by reference all preceding paragraphs.

78. DCR is a recipient of federal financial assistance and is subject to Section 504 of the Rehabilitation Act.

79. Plaintiff is an individual with a disability under Section 504 and is otherwise qualified to perform the essential functions of her position. Defendants discriminated against Plaintiff solely or substantially by reason of her disability, denied her reasonable accommodations, and retaliated against her for asserting her rights, in violation of Section 504.

## THIRD CAUSE OF ACTION
*(Discrimination, Hostile Work Environment, and Retaliation Based on Sex, Race, and Color under Title VII, 42 U.S.C. §§ 2000e-2, 2000e-3 — Against DCR and the Commonwealth)*

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Plaintiff is a woman, a person of Afro-descendant race, and a person of Black or non-white color, and is a member of protected classes under Title VII.

82. Defendants subjected Plaintiff to disparate treatment in compensation, demotion, discipline, transfer, terms and conditions of employment, and access to telework, motivated by sex-, race-, and color-based bias, including by treating Plaintiff less favorably than non-Black/non-Afro-descendant and male comparators (including Defendant Modesto Sánchez-de León).

20

83. Defendants subjected Plaintiff to a hostile work environment based on sex, race, and color that was severe and pervasive, including coordinated isolation, threats, public defamation, intrusion into her office, retention of her clinical files, intimidation of supportive coworkers, and the cumulative pattern alleged above.

84. Defendants retaliated against Plaintiff for her protected activity—including her EEOC charge, internal complaints, public denunciations, accommodation requests, and counsel's cease-and-desist demands—as set forth above.

### FOURTH CAUSE OF ACTION
*(Equal Pay Act, 29 U.S.C. § 206(d) — Against DCR and the Commonwealth)*

85. Plaintiff incorporates by reference all preceding paragraphs.

86. Plaintiff has performed work substantially equal to that of male comparators—including Defendant Modesto Sánchez de León—in jobs requiring equal skill, effort, and responsibility, performed under similar working conditions in the same establishment.

87. Defendants paid Plaintiff at a rate less than the rate paid to such male employees, and the differential is not justified by seniority, merit, quantity or quality of production, or any factor other than sex. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to a three-year statute of limitations and liquidated damages under 29 U.S.C. § 216(b).

### FIFTH CAUSE OF ACTION
*(42 U.S.C. § 1983 — First Amendment Retaliation — Against the Individual Defendants in Their Personal Capacities)*

88. Plaintiff incorporates by reference all preceding paragraphs.

89. Plaintiff engaged in speech as a citizen on matters of public concern, including public denunciations of agency corruption, irregular appointments, discriminatory practices, denial of accommodations, and contractor misconduct.

21

90. The individual Defendants, acting under color of state law, took adverse actions against Plaintiff—including demotion, discipline, transfer, professional isolation, retaliatory referrals to OEG, and intimidation—because of her protected speech, with the intent to chill, punish, and silence her, and would have chilled a person of ordinary firmness from continuing to speak.

### SIXTH CAUSE OF ACTION
*(42 U.S.C. § 1983 — Procedural and Substantive Due Process — Against the Individual Defendants in Their Personal Capacities)*

91. Plaintiff incorporates by reference all preceding paragraphs.

92. Plaintiff has constitutionally protected property and liberty interests in her career classification, her supervisory differential, her vested compensation, and her professional reputation.

93. Defendants deprived Plaintiff of those interests without notice, hearing, or opportunity to be heard, including by stripping supervisory functions and differentials, imposing salary deductions and a $16,000+ alleged debt without process, denying access to investigative files and her own personnel record, irregularly substituting hearing officers, weaponizing parallel forums, recycling stale facts to support new discipline, and pursuing disciplinary processes outside the regulatory time frame.

94. Defendants' conduct also "shocks the conscience" and constitutes substantive due process violations, including the orchestrated campaign of fabricated discipline, denial of medical accommodations, and use of state power to harm a disabled employee for retaliatory and discriminatory reasons.

### SEVENTH CAUSE OF ACTION
*(42 U.S.C. § 1983 — Equal Protection — Against the Individual Defendants in Their Personal Capacities)*

22

95. Plaintiff incorporates by reference all preceding paragraphs.

96. Defendants treated Plaintiff differently from similarly situated employees, including Modesto Sánchez de León, on the basis of disability, sex, race, color, and the exercise of protected rights. Defendants also engaged in selective enforcement of disciplinary, ethics, and personnel rules. There was no rational basis—let alone the heightened justifications applicable to suspect classifications—for the differential treatment.

## EIGHTH CAUSE OF ACTION

*(42 U.S.C. § 1983 — Violation of the Right to Informational Privacy — Against the Individual Defendants in Their Personal Capacities)*

97. Plaintiff incorporates by reference all preceding paragraphs.

98. Plaintiff has a constitutional right to informational privacy in her medical, psychological, and personnel records and her sensitive personal information. Defendants, acting under color of state law, intentionally accessed, removed, retained, disseminated, or publicly disclosed such information without authorization, justification, or any legitimate penological or institutional interest.

## NINTH CAUSE OF ACTION

*(42 U.S.C. §§ 1985(3) and 1986 — Conspiracy to Deprive Civil Rights and Neglect to Prevent — Against All Individual Defendants and Physician Correctional)*

99. Plaintiff incorporates by reference all preceding paragraphs.

100.    Defendants—including the individual state Defendants and Defendants Physician Correctional and Orlando Quiñones—conspired with one another for the purpose of depriving Plaintiff, a member of protected classes (sex, race, and color under § 1985(3)), of equal protection of the laws and of equal privileges and immunities. In furtherance of the conspiracy Defendants committed numerous overt acts described above, causing Plaintiff injury.

23

101.    Defendants who had knowledge of the wrongs conspired to be done and the power to prevent or aid in preventing them neglected or refused to do so, in violation of 42 U.S.C. § 1986.

## TENTH CAUSE OF ACTION
*(Supplemental Puerto Rico Statutory and Constitutional Claims — Against All Defendants)*

102.    Plaintiff incorporates by reference all preceding paragraphs.

103.    Defendants' conduct violates Puerto Rico law, including without limitation: Law No. 44 of July 2, 1985 (disability discrimination); Law No. 100 of June 30, 1959 (employment discrimination); Law No. 69 of July 6, 1985 (sex discrimination); Law No. 17 of April 22, 1988 (sexual harassment); Law No. 115 of December 20, 1991 (anti-retaliation); Law No. 8 of February 4, 2017 (public-service human-resources administration); Law No. 17 of April 17, 1931 (wage payment, including the right to direct deposit); Articles II, §§ 1, 7, 8, and 16 of the Puerto Rico Constitution; and Articles 1536–1537 of the Puerto Rico Civil Code of 2020 (general tort liability), including for defamation as detailed above.

## ELEVENTH CAUSE OF ACTION
*(Tortious Interference and Civil Conspiracy under Puerto Rico Law — Against Physician Correctional, Orlando Quiñones, and Individual Defendants)*

104.    Plaintiff incorporates by reference all preceding paragraphs.

105.    Defendants Physician Correctional and Orlando Quiñones, in concert with the individual state Defendants, intentionally interfered with Plaintiff's employment relationship and clinical practice, including by directing contractor psychologists to refuse Plaintiff's referrals, by causing the issuance of false statements that DCR then used to initiate disciplinary processes, by procuring an OEG referral against her, and by using

24

government facilities to coerce personnel against her. Defendants acted maliciously, without justification, and with knowledge of Plaintiff's rights.

## TWELFTH CAUSE OF ACTION
*(42 U.S.C. § 1981 via 42 U.S.C. § 1983 — Race Discrimination in Employment — Against the Individual Defendants in Their Personal Capacities)*

106.    Plaintiff incorporates by reference all preceding paragraphs.

107.    Section 1981 of Title 42 guarantees all persons within the jurisdiction of the United States the same right to make and enforce contracts, including employment contracts, as is enjoyed by white citizens. 42 U.S.C. § 1981(a). "Make and enforce contracts" encompasses the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b). Because Defendants are state actors, Plaintiff's § 1981 claim is pursued as a cause of action under 42 U.S.C. § 1983. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989).

108.    Plaintiff is a Black/Afro-descendant woman. Her race and color are a but-for cause and a motivating factor in the individual Defendants' conduct. The facts giving rise to the § 1981 claim include, without limitation:

• Plaintiff was the only Black/Afro-descendant supervisor among the five SPEA supervisors and was the only one demoted under the 2023 reclassification, despite holding superior academic credentials and the only active professional license in the group.

• A less-qualified, non-Black male (Defendant Sánchez-de León) was designated over Plaintiff, paid a higher compensation, and afforded telework and more favorable terms and conditions of employment denied to Plaintiff.

• Plaintiff was subjected to heightened scrutiny, fabricated discipline, and retaliatory investigations not applied to non-Black comparators engaging in the same or similar conduct.

- Plaintiff's supervisory differential was revoked while differentials of non-Black comparators were maintained.

- Plaintiff was professionally isolated and her clinical referrals and directives were countermanded—through coordinated action of DCR officials and Physician Correctional—while non-Black colleagues retained their functions.

- The hostile work environment—including intrusion into her office, retention of her files, public defamation, intimidation of witnesses, and multi-forum persecution—was directed at Plaintiff as the only Black/Afro-descendant supervisor and was sufficiently severe and pervasive to constitute race-based interference with the enjoyment of her employment contract.

109.    The individual Defendants acted under color of state law, intentionally, willfully, and with reckless disregard for Plaintiff's federally protected right to be free from racial discrimination in all aspects of the employment relationship.

110.    As a direct and proximate result of Defendants' violations of § 1981 (via § 1983), Plaintiff has suffered loss of wages, benefits, the supervisory differential, professional advancement, and has endured severe emotional distress, reputational harm, and consequential financial harm. Plaintiff is entitled to back pay, front pay, compensatory damages, punitive damages against the individual Defendants, attorneys' fees under 42 U.S.C. § 1988, and all other available relief.

### THIRTEENTH CAUSE OF ACTION
*(Family and Medical Leave Act — Interference and Retaliation, 29 U.S.C. §§ 2615(a)(1) and (a)(2) — Against DCR and the Commonwealth)*

111.    Plaintiff incorporates by reference all preceding paragraphs.

26

112.    At all times relevant, Plaintiff was an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2), having worked for DCR for more than twelve (12) months and for at least 1,250 hours in the preceding twelve-month period. DCR is a "covered employer" under the FMLA, 29 U.S.C. § 2611(4).

113.    Plaintiff's disabilities—including epilepsy, encephalomalacia, chronic sleep disorder, recurrent migraines, traumatic brain injury sequelae, major depressive disorder, generalized anxiety disorder, and post-surgical ankle condition—constitute "serious health conditions" involving inpatient care or continuing treatment by health-care providers within the meaning of 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115.

114.    DCR interfered with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a)(1) by: (a) failing to designate absences attributable to Plaintiff's serious health conditions as FMLA-qualifying leave; (b) failing to provide Plaintiff with FMLA notices required under 29 C.F.R. §§ 825.300–825.301; (c) failing to engage in any good-faith interactive process to determine FMLA eligibility and entitlement; (d) counting FMLA-protected absences toward disciplinary thresholds in admonitions and disciplinary proceedings; and (e) failing to restore Plaintiff to her position or an equivalent position following protected leave.

115.    DCR retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights in violation of 29 U.S.C. § 2615(a)(2). Defendants used Plaintiff's disability-related absences—which were or should have been designated as FMLA leave—as a basis for successive disciplinary admonitions, including admonitions specifically citing "absenteeism." The temporal proximity between Plaintiff's accommodation and leave requests and the ensuing disciplinary actions, the pattern of escalating discipline following each protected communication, and DCR's departure from its own progressive-discipline policies all demonstrate retaliatory intent.

27

116.　As a result of DCR's FMLA violations, Plaintiff has suffered lost wages, benefits, employment opportunities, and other compensation. Plaintiff is entitled to recover wages, salary, employment benefits, and other compensation lost as a result of the violations; an equal amount as liquidated damages; equitable relief including reinstatement; and attorneys' fees and costs pursuant to 29 U.S.C. § 2617.

## FOURTEENTH CAUSE OF ACTION

*(Fair Labor Standards Act — Minimum Wage, Overtime, and Unlawful Deductions, 29 U.S.C. §§ 206–207, 215(a)(3) — Against DCR and the Commonwealth)*

117.　Plaintiff incorporates by reference all preceding paragraphs.

118.　At all times relevant, Plaintiff was an "employee" of DCR within the meaning of the FLSA, 29 U.S.C. § 203(e), and DCR was an "enterprise engaged in commerce" and a "public agency" covered by the FLSA, 29 U.S.C. §§ 203(d), 203(s).

119.　Defendants violated the FLSA by: (a) failing to pay Plaintiff at the applicable minimum wage for all hours worked, including hours worked remotely during the COVID-19 pandemic that were wrongfully charged against her leave balances rather than compensated; (b) imposing unauthorized deductions totaling over $16,000 from Plaintiff's wages without a valid legal basis; (c) refusing to pay Plaintiff for weekend days worked on detail; and (d) maintaining inaccurate KRONOS records while correcting equivalent records for similarly situated non-protected employees.

120.　Defendants also retaliated against Plaintiff for complaining about wage violations, in violation of 29 U.S.C. § 215(a)(3). Plaintiff's requests for direct deposit, correction of KRONOS records, and payment for remote and weekend work constitute protected activity under the FLSA, and the pattern of escalating discipline following those requests reflects retaliatory purpose.

28

121.    Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to a three-year statute of limitations. Plaintiff is entitled to recovery of unpaid wages, an equal amount as liquidated damages, equitable relief, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**FIFTEENTH CAUSE OF ACTION**
*(42 U.S.C. § 1983 — Equal Protection: Sex-Based Animus and Retaliatory Harassment Derived from Former Intimate Relationship — Against Defendant Méndez Rivera in His Personal Capacity)*

122.    Plaintiff incorporates by reference all preceding paragraphs.

123.    Defendant Méndez Rivera, acting under color of state law in his capacity as DCR's principal legal officer, subjected Plaintiff to a pattern of retaliatory and harassing conduct rooted in, and inseparable from, animus arising from a prior intimate relationship with Plaintiff that Plaintiff terminated. This conduct includes, without limitation: improper intervention in Plaintiff's accommodation request; written threats of discipline for asserting disability rights; fabrication or promotion of disciplinary allegations; preparation and prosecution of the OEG referral against Plaintiff; and systematic effort to deprive Plaintiff of the terms and conditions of her employment.

124.    Méndez Rivera's conduct constitutes sex-based harassment and disparate treatment in violation of the Equal Protection Clause, as it was motivated by gender-based animus—specifically, animosity arising from the termination of a personal relationship—and would not have occurred but for Plaintiff's sex. Such conduct by a state official under color of law violates the Fourteenth Amendment's guarantee of equal protection.

125.    Méndez Rivera acted with malice or reckless indifference to Plaintiff's constitutional rights. Plaintiff is entitled to compensatory and punitive damages, equitable relief, and attorneys' fees under 42 U.S.C. § 1988.

## SIXTEENTH CAUSE OF ACTION

*(42 U.S.C. § 1983 — Municipal/Institutional Liability (Monell) —
Against DCR and the Commonwealth)*

126.    Plaintiff incorporates by reference all preceding paragraphs.

127.    DCR and the Commonwealth are liable under 42 U.S.C. § 1983 because the constitutional violations alleged herein were carried out pursuant to one or more official policies, practices, or customs of DCR, including: (a) a policy or practice of failing to process or grant reasonable-accommodation requests from employees with disabilities; (b) a policy or practice of retaliating against employees who file EEOC charges, internal complaints, or engage in protected opposition; (c) a policy or practice of tolerating and ratifying race- and sex-based harassment and disparate treatment; (d) a policy or practice of using administrative and ethics forums (including OEG) as instruments of retaliation against protected employees; and (e) a failure to train supervisors and legal personnel regarding disability accommodation obligations, anti-retaliation requirements, and FMLA rights.

128.    Policymakers at DCR—including Defendant Escobar as former Secretary and Defendant Quiñones-Rivera as current Secretary—were aware of and deliberately indifferent to the pattern of constitutional violations described in this Complaint, ratifying or continuing the policies and practices that caused Plaintiff's injuries.

129.    The constitutional violations alleged herein were the direct and proximate result of these official policies, practices, customs, and failures to train. DCR and the Commonwealth are therefore liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and its progeny.

30

## VI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and grant the following relief:**

- Declare that Defendants violated Plaintiff's rights under the ADA, the Rehabilitation Act, Title VII, the Equal Pay Act, 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, the FMLA, the FLSA, and applicable Puerto Rico law and Constitution;

- Order reinstatement to Plaintiff's former position as Supervisor of the Metropolitan Evaluation and Counseling Program (SPEA Carolina–San Juan), with restoration of all supervisory differentials, benefits, leave balances, seniority, and any other vested rights;

- Order DCR to engage in a good-faith interactive process and to provide Plaintiff with reasonable accommodations, including, as appropriate, telework, modified scheduling, ergonomic equipment, direct deposit, and posting at the Carolina facility;

- Award back pay, front pay, lost benefits, restoration of unlawfully deducted amounts (including approximately $400 monthly deductions and the alleged $16,000+ debt), unpaid FLSA wages, FMLA-lost compensation, and prejudgment interest;

- Award compensatory damages for emotional pain, suffering, humiliation, mental anguish, reputational injury, family harm, and consequential financial damages;

- Award liquidated damages under the Equal Pay Act, the FLSA, and the FMLA pursuant to 29 U.S.C. §§ 216(b) and 2617;

- Award punitive damages against Defendants Escobar, Méndez-Rivera, María Ortiz-Díaz, Sinaira Camacho-Heredia, María Yolanda Ortiz-Díaz, Modesto Sánchez-de León, Alexis Rodríguez-Rivera, Harry Jiménez, Orlando Quiñones, and Physician Correctional;

- Order injunctive relief enjoining Defendants from continuing the retaliatory and discriminatory conduct described herein, including the prosecution of OEG Complaint

31

26-01 and any further duplicative discipline based on the same factual matrix already pending before CASP;

- Treble or doubled damages, where applicable, under Puerto Rico Laws No. 44, 100, 69, and 115;

- Adverse inferences and other appropriate evidentiary, monetary, and curative sanctions for spoliation of evidence;

- Award reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. §§ 1988 and 12205, 29 U.S.C. §§ 794a, 216(b), and 2617, and any other applicable statute;

- Grant any and all other relief the Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by *jury* on all issues so triable.

## VIII. VERIFICATION

I, *Dr. Zoryleen Llanos Ferrer*, certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing facts are true and correct to the best of my knowledge, information, and belief.

Dr. Zoryleen Llanos Ferrer *(Plaintiff)*

32

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 1ˢᵗ day of May 2026.

/s/ **CARLOS E. MATOS**
Carlos E. Matos, Esq.
**USDC PR 309902**
PO Box 11249
San Juan PR 00922-1249
Tel: (787) 378-1002
Email: cemm787@gmail.com

/s/ **HUMBERTO COBO-ESTRELLA**
Humberto Cobo-Estrella, Esq.
**USDC-PR 230108**
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 529-7140
Email: *hcobo@hcounsel.com*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was filed electronically. Notice of this filing will be sent to all parties of which counsel has entered an operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*S/* Carlos E. Matos
*Attorney for Plaintiff*

33